**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
Jiaming Zheng (SBN 363184)
*jzheng@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Counsel for Plaintiff and the Proposed Classes*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BRANDON TAYLOR, individually and on behalf of all others similarly situated,

Plaintiff,

v.

INCOGNI INC.,

Defendant.

Case No.: 8:26-cv-2475

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMAND**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Plaintiff Brandon Taylor ("Plaintiff"), individually and on behalf of all others similarly situated, as more fully described below (the "Class" and "Class Members"), brings this class action complaint against Defendant Incogni Inc. ("Defendant"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I. INTRODUCTION

1. Every year, data brokers compile Americans' addresses, phone numbers, demographic data, purchasing histories, political inferences, and family relationships into profiles and sell them to the highest bidder. This market is now worth an estimated $307 billion a year, and growing.[1] Consumers who learn their personal information is for sale, want it removed, and a growing number of them are willing to pay to make that happen in order to preserve the privacy they cherish. In a world where everything feels monitored, people simply want to be left alone.

2. Incogni exploits that desire, and promises exactly that. It promises every customer, no matter where they live, that it will "remove [consumers'] personal information from the web," and it can "make data brokers remove your personal information from their databases." Incogni insists that its services "make exercising your right to data privacy easy by automating the data removal process." It assures that with Incogni, people will get "[a]dvanced privacy coverage."

3. The unequivocal pitch is compelling, and it works. But Incogni cannot deliver what it promises. Only California requires data brokers to honor deletion requests made on a consumer's behalf by a third party like Incogni. Everywhere else, all Incogni can do is ask, nothing more. It cannot compel data brokers, or anyone to comply, penalize when they refuse, or sue on a customer's behalf.

4. Incogni's own competitors admit these material limitations. They disclose that removal depends on third parties they do not control, and explain that they cannot

---

[1] *Data Broker Market Size, Share & Trends Report, 2025–2033*, GRAND VIEW RSCH. (2025), https://www.grandviewresearch.com/industry-analysis/data-broker-market-report.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

guarantee removal or suppression. Incogni tells customers the opposite, that it removes personal information from data brokers with no qualification, no mention of its limitations whatsoever. "Advanced privacy coverage," guaranteed.

5. The result is predictable. Customers pay Incogni for months, or years while locked into an annual plan, and fail to see the results they are promised. One customer writes: "Incogni does nothing except take my money and refuses to refund me."[2] Another finds her personal information is still public months into her subscription. The 2024 Consumer Reports study explains why: services like Incogni succeed in removing data only 35% of the time—worse than the 70% success rate of a customer who simply asks a broker to delete their own data for free.[3]

6. Incogni's conduct must be stopped. Plaintiff brings this lawsuit on behalf of himself and all similarly situated consumers who purchased Incogni's advertised data removal services. Incogni chose a false promise of certainty over honesty, at the expense of competition and consumers. Competitors lost customers to a rival willing to lie, and consumers paid a price premium for a promise Incogni knew it could not keep.

## II. <u>JURISDICTION</u>

7. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

---

[2] *Incogni Data Removal Review*, REDDIT (2024), https://www.reddit.com/r/privacy/comments/1d446sj/comment/l6bxjbc.

[3] Scott Medintz, *Services That Delete Your Data From People-Search Sites Don't Work Very Well, Study Finds*, CONSUMER REPORTS (Aug. 8, 2024), https://www.consumerreports.org/electronics/personal-information/services-that-delete-datafrom-people-search-sites-review-a2705843415/.

8. This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the privilege of conducting business in California and has significant, continuous, and pervasive contacts with the State of California.

## III. VENUE

9. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Defendant has its principal place of business in this District, and the decisions underlying the Challenged Representations and Omissions, including marketing language, pricing, disclosures (or lack thereof) originated from here.

## IV. PARTIES

10. **Plaintiff Brandon Taylor.** The following is alleged based upon Plaintiff's personal knowledge:

a. **Residence.** Plaintiff is a resident of Pinellas County, in the State of Florida.

b. **Purchase Details.** Plaintiff purchased the Services for approximately $77.88 annually, beginning April 5, 2024.

c. **Reliance on the Challenged Representations and Omissions.** In deciding to make the purchase, Plaintiff Taylor viewed and relied upon the Challenged Representations and Omissions on Incogni's official website, as well as other Incogni advertising and marketing, leading Plaintiff to believe that the Services would protect customers' privacy, protect against identity theft and were specifically designed to ensure the deletion of consumers' data from people-finder sites and data broker sites. Plaintiff relied on Defendant's privacy-centered marketing campaign and purchased the Services to remove his data from the broker sites. Plaintiff sought to secure his privacy and purchased the Services in reliance on Defendant's representations of



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

the Services' features, purpose, and recommended use.

d. **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Taylor did not know of the Challenged Omissions or that the Challenged Representations were false—i.e., that the Services cannot be effectively provided in most states as advertised due to state laws.

e. **No Notice of Contradictions.** Plaintiff Taylor did not notice any disclaimer, qualifier, or other explanatory statement or information in the Services' advertising and marketing that contradicted the prominent Challenged Representations and Omissions or otherwise indicated that the Services are not effective at removing personal data from data broker and people-finder sites in nearly all states.

f. **Causation/Damages.** Plaintiff Taylor would not have purchased the Services, or would not have paid as much for the Services, had the Challenged Omissions been disclosed and/or had Plaintiff otherwise known that the Challenged Representations were not true—i.e., that the Services do not actually guarantee the removal and deletion of customers' private data from people-finder sites and data brokers.

g. **Desire to Repurchase.** Plaintiff Taylor continues to see the Services available for purchase and desires to purchase them again if the Challenged Representations and Omissions were true—i.e., if the Services were effective in all states at removing personal data from data broker sites.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Taylor does not possess specific legal knowledge of regularly changing and state-specific privacy laws. Thus, Plaintiff Taylor is unable to determine whether the Challenged Representations and Omissions are true—i.e., whether the Services can require that data brokers follow through with their deletion requests.

i. **Inability to Rely.** Plaintiff Taylor is, and continues to be, unable to rely on the truth of the Challenged Representations in the advertising and marketing of the Services. Plaintiff had no meaningful way to independently confirm whether the removals Incogni reported were genuine or complete. The dashboards and reports on which Plaintiff relied were generated by Incogni itself—a self-serving account of its own performance that Plaintiff, as a layperson, lacked the tools, access, or expertise to verify.

11. **Plaintiff's Future Harm.** Defendant continues to market and sell the Services with the Challenged Representations and Omissions. Plaintiff would like to purchase the Services in the future if they live up to and conform with the Challenged Representations and Omissions. However, Plaintiff is an average consumer who is not sophisticated in, for example, the nature of data broker services and data broker removal services, and whether the data broker removal services are legal under specific (and often changing) state laws. Since Plaintiff would like to purchase the Services again to obtain the benefits of the Challenged Representations and Omissions that Defendant continues to use—despite the fact that the Services were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Services are true to and conform to the Challenged Representations and Omissions.

12. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Services such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiff is currently and, in the future, deprived of the ability to rely on the Challenged Representations and Omissions in deciding to purchase the Services.

13. **Defendant Incogni Inc.** is an active California corporation with its principal place of business located at 25910 Acero #240, Mission Viejo, CA 92691. At all relevant times, Defendant was conducting business in the State of California.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Defendant is one of the owners, providers, and marketers of the Services, and is the company that created, authorized, and controlled the use of the Challenged Representations and Omissions to market the Services. Defendant and its agents promoted, marketed, and sold the Services at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations and Omissions on the Services were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout the nation by Defendant and its agents to deceive and mislead consumers across the United States into purchasing the Services.

## V. FACTUAL ALLEGATIONS

### A. Incogni's Fraudulent Representation About Its Data Removal Service

14. Incogni sells subscription personal data removal services (the "Services") and was founded in 2021 by cybersecurity company Surfshark.[4] Incogni advertises as covering removal from the US, EU, and Canadian data brokers.

15. Incogni falsely states to every consumer that it can and will automatically remove the personal information of customers from public websites (such as people search engines) and private databases. To perpetuate its false promise of data removal, Incogni engages in a fraudulent marketing scheme with various representations on its webpage, all conveying the same core data removal message, while omitting the fact that it lacks such comprehensive and broad power to request and enforce removals, except for California consumers.

16. Specifically, Incogni has made false and misleading claims, including but not limited to, the following:

a. "We believe that data privacy is a human right. Our mission is to make it available to all"[5]

---

[4] *About Us*, INCOGNI, https://incogni.com/about-us (last visited Aug. 25, 2026) (Some of these statements were subsequently removed by Incogni, but it will have records of the information available on its website at the time this was obtained).

[5] *Id.*

b. "The Incogni team, equipped with the legal experience you may not have, will speed this process up for you. Instead of having to read through reams of legalese and having to remember which brokers answered emails at all, you'll be able to simply observe the process via our updates."[6]

c. That Incogni uses the GDPR, CCPA, and other privacy laws to "make data brokers remove your personal information from their databases."[7]

d. That Incogni achieves deletion from data brokers by regularly sending requests to data brokers on the customer's behalf and will ask data brokers to add the customer's profile to their suppression lists.[8]

e. That Incogni's Services will "[p]revent invasion of privacy, identity theft, and online harassment by keeping your data off public databases" and "[k]eep data brokers from selling your info to third party organizations and protect yourself from spam, increased insurance rates, and more."[9]

f. "Prevent invasion of privacy, identity theft, and online harassment by keeping your data off public databases"[10]

g. "Keep data brokers from selling your info to third party organizations and protect yourself from spam, increased insurance rates, and more."[11]

h. "Improve your privacy over time by removing profiles linked to your current and past emails, home addresses, and phone numbers, as we continually add new data brokers and people search sites."[12]

---

[6] Surfshark in News, *Introducing Incogni: Deleting Your Data from Online Databases for You*, SURFSHARK (Jan. 3, 2022), https://surfshark.com/blog/introducing-incogni (emphasis added).
[7] *Supra* note 4.
[8] INCOGNI, https://incogni.com/data-removal-from-internet (last visited Aug. 25, 2026); *What Do the Data Removal Statuses on My Dashboard Mean?*, INCOGNI HELP, https://support.incogni.com/hc/en-us/articles/4904721869458-What-do-the-data-removal-statuses-on-my-dashboard-mean (last updated 2026).
[9] *Supra* note 4.
[10] *Id.*
[11] *Id.*
[12] *Id.*



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

17. Incogni claims that it can provide these services without making clear that it relies on national and state privacy laws which only apply to a small portion of people. The representations identified in the preceding paragraph, together with Incogni's omission of its inability to compel removal on behalf of consumers outside California, are referred to as the "Challenged Representations and Omissions."

**B. Data Broker Removal Services Industry**

18. Data brokers collect individuals' personal information from a variety of sources, including public records, browsing history, and purchase history.[13] Brokers then assemble the data to create a profile of the individual and sell it to businesses and insurance firms.[14] Businesses may use this data for a variety of reasons, such as marketing strategies, while insurance firms may use data from data brokers to help determine how much a person will pay for insurance.[15]

19. Beyond data brokers, "people search sites" have also proliferated online. The Federal Trade Commission has said that "People search sites, also known as people finder sites, collect personal information about us from a variety of sources, compile it into a report, and sell those reports to anyone willing to pay for them."[16] Many consumers are worried about the ability of strangers to easily obtain information about them, such as address, email, phone number, birth date, and other information, often for free or for payment of a small fee.

20. Data brokers pose dangers to individuals because they increase the ability to identify a person's identity. A study found that with 15 demographic data points, an individual could be identified with a 99.98% certainty, which poses harassment or

---

[13] Zachary McAuliffe, *Data Brokers and Personal Data Deletion Services: What You Should Know*, CNET (Feb. 22, 2023), https://www.cnet.com/tech/services-and-software/data-brokers-and-personal-data-deletion-services-what-you-should-know/.

[14] *Id.*

[15] *Id.*

[16] *What to Know About People Search Sites That Sell Your Information*, FEDERAL TRADE COMMISSION CONSUMER ADVICE (2022), https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

stalking risks.[17] Further, health insurance companies purchase data from brokers and use it for unfair practices, such as determining how much medical coverage a person receives.

21. Due to businesses' growing demand for data-driven insights into consumers, the data broker industry's market size has been rapidly increasing. In 2023, the data broker industry market size was valued at $257.2 billion and is now expected to grow to $441.4 billion by 2032.[18]

22. As the data broker industry becomes more prevalent, consumers' demand for data broker removal services has increased. Approximately 14 million U.S. adults used data broker removal services, and that number is expected to grow to 26 million people in 12 months.[19]

23. Unfortunately, despite strong claims, data broker removal services often fail to live up to their promises to remove consumers' data from public websites. A 2024 study by Consumer Reports found that "removal services generally had low success at removing the volunteers' data."[20] Consumer Reports recruited 28 volunteers to sign up for seven popular removal services.[21] Consumer Reports researchers found a total of 332 pieces of the volunteers' personal information on prominent people-search sites. However, only 117 pieces of this information, or 35%, had been removed by the services after four months.[22]

---

[17] Luc Rocher et al., *Estimating the Success of Re-Identifications in Incomplete Datasets Using Generative Models*, NATURE COMMUNICATIONS (July 23, 2019), https://www.nature.com/articles/s41467-019-10933-3.

[18] SNS Insider, *Data Brokers Market to USD 441.4 Billion by 2032, Owing to Growing Demand for Targeted Marketing and Consumer Insights*, EINPRESSWIRE (Feb. 19, 2025), https://www.einpresswire.com/article/787295874/data-brokers-market-size-to-surpass-usd-441-4-billion-by-2032-owing-to-growing-demand-for-targeted-consumer-insights.

[19] Gene Petrino, *Despite Growing Concerns About Data Privacy, Only 6% of American Adults Have Used Data Removal Services*, SECURITY.ORG, https://www.security.org/resources/data-removal-service-usage-study/ (last updated Mar. 23, 2026).

[20] Medintz, *supra* note 3.

[21] *Id.*

[22] *Id.*

24. In contrast, the Consumer Reports study found that manually requesting the removal of one's data from data brokers, instead of relying on a data broker removal service, was much more effective. This free method was successful 70% of the time—versus the 35% of the data broker removal services.[23]

25. Many data broker removal services operate under a subscription-based business model because data brokers and people finder sites can still locate and access consumers' information even after it has been deleted, undermining the effectiveness of these services.[24]

26. Yet, Incogni claims that it could "automatically removes your information from data broker websites," and that, in unqualified terms, its solution "removes personal information from data brokers on your behalf," reinforcing the impression that Incogni will actually accomplish rather than merely request the deletion of consumers' data.[25] Incogni also fails to clarify that its Services cannot remove data from all data brokers, including popular "people search" websites such as TruthFinder, PeopleConnect, and WhitePages, meaning that, even if consumers' data is removed from many data brokers, it can remain available and accessible via alternative data brokers.

27. Accordingly, such claims by Incogni that, "We re-scan and send out fresh waves of removal requests regularly, so data brokers and people search sites won't have the chance to collect and start selling more of your personal information" are misleading, as many data brokers and people search sites are not targeted for removal by Incogni at all.[26]

[23] *Id.*
[24] McAuliffe, *supra* note 13.
[25] *Supra* note 4.
[26] *INCOGNI, supra note 8*.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### C. Incogni Cannot Ensure the Removal of Consumers' Data

28. Incogni markets its Services to everyone, even to individuals who are not covered by state privacy laws, which do not cover the majority of Americans.[27] Therefore, most of these customers do not have the privacy rights *necessary* to support the deletion requests Incogni makes on behalf of customers.

29. Of the states that provide consumers with any specific privacy rights, only a minority of them allow consumers to use authorized agents to opt out of targeted advertising. California is the only state that requires businesses to honor consumer privacy requests submitted not just by consumers themselves but also by authorized agents designated by consumers to act on their behalf.[28] In the other forty-nine states, Incogni cannot "make" the broker delete anything, nor promise "[a]dvanced privacy coverage" or any privacy at all, as data brokers have no legal obligation to honor deletion requests from third parties like Incogni.[29]

30. Incogni compounds this deception by invoking the GDPR alongside the CCPA to suggest that consumers possess enforceable, cross-border deletion rights that Incogni may exercise on their behalf. Reasonable consumers reviewing the subscription services are not lawyers. They do not know that these laws do not apply to them. The GDPR applies to Europe, not the U.S., and it also does not allow Incogni to act on behalf of consumers. Article 80 of the GDPR—the only provision of the regulation authorizing a third party to exercise a data subject's rights—permits such representation only by not-for-profit bodies, organizations, or associations that have been properly constituted under the law of an EU member State, that have statutory objectives in the public interest, and that are active in the field of the protection of data subjects' rights and freedoms. As a commercial, for-profit subscription service

---

[27] Tony Ficarrotta, *Some Authorized Agent Providers Are Selling Privacy Snake Oil and Why It Needs to Stop*, IAPP (Feb. 13, 2025), https://iapp.org/news/a/some-authorized-agent-providers-are-selling-privacy-snake-oil-and-why-it-needs-to-stop.

[28] *Id.*

[29] *Supra* note 4.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

provider, Incogni satisfies none of these requirements and lacks authority to enforce GDPR deletion rights on any consumer's behalf in Europe or the U.S.

31. Moreover, many of the state privacy statutes on which a service like Incogni would depend are materially narrower than California's in ways that sharply limit their real-world utility. For example, the Florida Digital Bill of Rights has a much more limited applicable scope. For example, it reaches only entities exceeding $1 billion in global annual revenue; such entities must also satisfy one of three additional criteria—deriving 50% of revenue from online advertising, operating a voice-command service with an integrated smart speaker, or running a software application store offering at least 250,000 applications.[30] And even where a broker falls within scope, consumers have no private right of action to enforce compliance.[31] The CCPA, by contrast, reaches any for-profit business doing business in California that exceeds a far lower revenue or data-volume threshold. As a result, even where a state privacy law exists on paper, it may impose no obligation at all on the particular data broker holding a given consumer's information.

32. Accordingly, Incogni can only legally provide its data broker removal Services—which require it to make deletion requests to data brokers on behalf of its customers—in only one of the fifty states to which it markets and offers its data broker removal Services. Yet, Incogni claims to "re-scan and send out fresh waves of removal requests regularly, so data brokers and people search sites won't have the chance to collect and start selling more of your personal information,"[32] misleading its customers by suggesting that it is capable of continuously removing their personal data from data broker sites, when, in fact, it is capable of doing so in only California, which is approximately 11% of the US population, though Incogni targets and signs up consumers nationally.

---

[30] Fla. Stat. § 501.702(9)(a).

[31] Fla. Stat. § 501.72(8) ("This part does not establish a private cause of action.").

[32] INCOGNI, *supra* note 8.

33. To profit from consumers' reliance on the advertised continuous removals, Incogni offers both annual and monthly rates for different plans for its Services. For example, as currently reflected on Incogni's webpage, the most affordable plan, the standard plan, is priced at $95.88 annually. The monthly price for this plan is priced at $15.98 per month.[33]

34. Incogni touts "[w]e continually track down and add new data brokers and people search sites to our list, so your level of protection keeps improving over time,"[34] which gives consumers a false impression that if they subscribe to an annual plan they will be better protected. While Incogni's annual plan is significantly more expensive than the monthly option, both the monthly and annual plans fail to ensure the removal of customers' data if the customer lives in a state that does not require data brokers to follow deletion requests—which includes most states. Incogni also does not differentiate in its pricing between states where it can effectively remove information, and those that it cannot, further misleading consumers into believing that Incogni will be effective regardless of their state of residence. Regardless of the plan purchased, Incogni will not be able to follow through on its deletion promises for every customer or potential customer.

35. Nothing in the manner in which Incogni presents its Terms of Service cures these representations. On Incogni's website, the Terms of Service are accessible only through a hyperlink at the very bottom of the page, displayed in a lighter shade than the surrounding text, which is a placement and format that a reasonable consumer would not be expected to notice, let alone examine. At checkout, the Terms are presented in minuscule type relative to the surrounding text and are enclosed within the same border as the consumer's payment information, without any separate border or heading setting them apart. A reasonable consumer is not required to hunt for, or

---

[33] *Pricing*, INCOGNI, https://incogni.com/pricing (last visited Aug. 25, 2026).
[34] INCOGNI, *supra* note 8.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

to scrutinize, qualifying language presented in this manner in order to discover that Incogni's prominent representations are misleading.

**D. No Adequate Remedy at Law**

36. Plaintiff and the Class are entitled to equitable relief as no adequate remedy at law exists.

37. The statutes of limitations for the causes of action pled in this Complaint vary. The limitations period is four years for claims brought under California's Unfair Competition Law ("UCL"), which is one year longer than the statutes of limitations under California's False Advertising Law ("FAL").

38. In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted here. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of services at issue). Thus, Plaintiff and Class Members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted here. Similarly, unjust enrichment/restitution is broader than some other claims for damages. Thus, Plaintiff and Class Members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under other claims.

39. Injunctive relief is appropriate on behalf of Plaintiff and the Class because Defendant continues to misrepresent the Services with the Challenged Representations and Omissions. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described here and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of a corrective advertising campaign and affirmative disclosures, is necessary to dispel the public misperception about the Services that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly

disseminated statements providing accurate information about the true nature of its Services, and an advertising campaign focused on correcting the prior false and misleading statements. An injunction requiring affirmative disclosures, as well as corrective advertising, to dispel the public's misperception and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Services, and quantities of past/future sales of Services.

40. Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

41. Plaintiff and the Class assert claims based on California law. Dismissal of equitable claims, such as restitution, would bar recovery for Class Members where damages are unavailable or inadequate. Thus, Plaintiff and Class Members may be entitled to equitable relief where legal remedies do not provide full and adequate relief.

42. Lastly, this is an initial pleading in this action, and discovery has not yet commenced. No class has been certified yet. No expert discovery has commenced. The completion of fact/non-expert and expert discovery, as well as certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI. CLASS ACTION ALLEGATIONS

43. **Class Definition.** Plaintiff brings this action as a class action, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself, and all others similarly situated as members of the Classes defined as follows:

**Nationwide Class**

> All residents of any of the United States, excepting California, who, within the applicable statute of limitations periods, purchased the Services, containing the Challenged Representations and Omissions in the Services' advertising and marketing, for purposes other than resale.

**Florida Subclass**

> All residents of the State of Florida who, within the applicable statute of limitations periods, purchased the Services, containing the Challenged Representations and Omissions in the Services' advertising and marketing, for purposes other than resale ("Florida Subclass").

44. The Nationwide Class and Florida Subclass shall be collectively referred to as the "Class."

45. **Class Definition Exclusions.** Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

46. **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

47. **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of tens of

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

thousands of purchasers (if not more) dispersed throughout the United States. Accordingly, it would be impracticable to join all members of the Class before the Court.

48. **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a. Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Services;

b. Whether Defendant engaged in fraudulent business practices by advertising and selling the Services;

c. Whether Defendant withheld material information when advertising and selling the Services;

d. Whether Defendant's advertising differed based on the residency of prospective consumers;

e. The extent of Defendant's conduct of advertising and selling the Services as an effective means to remove personal data from data broker sites across the United States;

f. Whether Plaintiff and the Class paid more money for the Services than they actually received;

g. The price premium that Plaintiff and the Class paid for the Services; and

h. Whether Defendant was unjustly enriched by its unlawful conduct.

49. **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

50. **Typicality.** Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Services. Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein, irrespective

of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

51. **Adequacy.** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

52. **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control.

53. **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

54. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

55. **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

56. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII. CAUSES OF ACTION

### COUNT ONE

**Fraud**

***(On Behalf of the Nationwide Class)***

57. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

58. Plaintiff brings this claim individually and on behalf of the Class under California law.

59. Defendant affirmatively misrepresented the capabilities of the Services when selling and marketing them.

60. Defendant also knew that its misrepresentations regarding the Services were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

61. Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Services.

62. Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

63. Plaintiff and Class Members had a right to rely upon Defendant's representations. Defendant's misrepresentations appeared prominently throughout its marketing, while the limitations on its service were not disclosed in any clear or conspicuous manner. A reasonable consumer was not required to investigate the accuracy of qualifying language buried in a hyperlinked Terms of Service in order to discover that the prominent representations were false.

64. Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT TWO

### Negligent Misrepresentation

### (*On Behalf of the Nationwide Class*)

65. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

66. Plaintiff brings this claim individually and on behalf of the Class under California law.

67. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the development, marketing, and sale of the Services.

68. Defendant breached its duty to Plaintiff and the Class by advertising the Services as having capabilities they do not actually have.

69. Defendant knew or should have known that the qualities and characteristics of the Services were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Defendant.

70. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Services had they known that the Services do not conform to the Services' marketing, advertising, or statements.

71. Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

**COUNT THREE**

**Breach of Implied Contract**

**(*On Behalf of the Nationwide Class*)**

72. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

73. Plaintiff brings this claim individually and on behalf of the Class under California law.

74. Defendant sold Plaintiff and the Class Members Services for which Defendant received a benefit in the form of monetary payment.

75. Defendant has acknowledged the benefit and accepted or retained the benefit conferred by accepting the monetary payment for the Service.

76. Implicit in the agreement between the Defendant and Plaintiff and Class Members was the claim that Incogni would be able to remove Plaintiff's and Class




Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Members' information from data broker and people-search sites, and that this removal would be effective.

77. Incogni also targeted Plaintiff and Class Members by claiming that they had a legal right to have their information deleted from data broker and people-search sites, when Defendant knew, or should have known, that this was not the case for the vast majority of targeted consumers.

78. Without such an implied contract, Plaintiff and the Class Members would not have paid for and conferred a benefit upon Defendant, but rather chosen a more cost-effective option.

79. Plaintiff and the Class Members fully performed their obligations under the implied contract with Defendant by purchasing the Services and conferring monetary payment upon the Defendant. However, by failing to provide the actual services which Defendant advertised (actually removing Plaintiff and Class Members' information from data broker and people-search sites), Defendant has failed to fully perform its obligations under the implied contract.

80. Defendant breached the implied contract with Plaintiff and Class Members by failing to provide Services which would actually remove their information from data broker and people-search sites.

81. Plaintiff and the Class Members purchased the Services from Defendant, relying on Defendant's claims without knowing that they were in fact false.

82. Defendant knew that if it had been made clear to Plaintiff and the Class Members that it did not have the legal right to require deletion of their information, they would not have purchased the Service, leading Defendant to make promises that it knew it could not deliver.

83. As a direct and proximate result of Defendant's breach of their implied contract with Plaintiff and the Class Members, Plaintiff and the Class Members have suffered and will suffer injury, including but not limited to the money they paid

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Incogni for services that were worthless to them, or, at the very least, much less valuable than what Defendant advertised.

**COUNT FOUR**

**Quasi-Contract / Unjust Enrichment**

**(*On Behalf of the Nationwide Class*)**

84. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

85. Plaintiff brings this claim individually and on behalf of the Class under California law.

86. To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

87. Plaintiff and Class Members conferred monetary benefits on Defendant by purchasing the Services. Defendant's profits are funded entirely from their generated revenues—payments made by or on behalf of Plaintiff and Class Members. As such, a portion of these payments was attributable to Defendant's Challenged Representations and Omissions.

88. Defendant knew that Plaintiff and the Class conferred a benefit which Defendant accepted, and through which, Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Services. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that contrary to its representations, the Services did not have the technical capabilities it had advertised, these misleading representations caused injuries to Plaintiff and Class Members because they would not have purchased the Services if the true facts were known.

89. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## COUNT FIVE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

***(On Behalf of the Nationwide Class)***

90. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

91. Plaintiff brings this claim on behalf of himself and on behalf of the Class.

92. This claim is brought under California law, since Incogni's principal place of business is located in California, where Incogni's high-level employees and officers direct, control, and coordinate the corporation's activities, including its marketing, product development, and major policy, financial, and legal decisions. Therefore, Incogni's unlawful actions emanated from California and this count is applicable to the Nationwide Class.

93. This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of those who purchased the Services within the applicable statute of limitations.

94. California Business & Professions Code sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

95. Defendant, in its advertising and marketing of the Services, made false and misleading statements and material omissions regarding the capabilities and characteristics of the Services—specifically, the Challenged Representations and Omissions that Defendant would "remove [consumers'] personal information from the web" and "make data brokers remove your personal information from their databases," and that consumers would obtain "[a]dvanced privacy coverage." Instead, outside California, Defendant has no legal authority to require any data broker to honor a deletion request submitted on a consumer's behalf, and can do no more than

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

ask. Such claims were made by Defendant in marketing its paid subscription Services throughout the United States.

96. Defendant lacked a reasonable basis for representing that it would remove consumers' personal information from data brokers and people search sites, or that consumers would obtain "[a]dvanced privacy coverage," because in forty-nine states Defendant cannot compel any data broker to delete anything. Defendant marketed the Services in a manner that led reasonable consumers to believe that it would accomplish, rather than merely request, the removal of their personal information.

97. Defendant's advertising and marketing of the Services led, and continues to lead, reasonable consumers, including Plaintiff, to believe that Defendant removes their personal information from data brokers and people search sites as represented, and thereby induced consumers to purchase, renew, or continue paying for the Services.

98. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations and Omissions—namely, Plaintiff and the Class Members overpaid subscription fees for the Services because Defendant did not provide the data removal it represented.

99. Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of services that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

100. Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

101. All of the conduct alleged here occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

102. Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and marketing of the Services. Likewise, Plaintiff and the Class Members seek an order requiring Defendant to disclose such misrepresentations and omissions, and to preclude Defendant's failure to disclose the existence and significance of the legal limitations on its data removal Services alleged here.

103. As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and the Class Members were harmed in the amount of the purchase price they paid for the Services. Further, Plaintiff and the Class Members have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Services, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class Members for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

**"Unfair" Prong**

104. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

105. Defendant's false advertising of the Services with the Challenged Representations and Omissions encouraged consumers to purchase, renew, or

continue paying for the Services with the expectation that Defendant would remove their personal information from data brokers and people search sites as represented. However, outside California Defendant cannot require any data broker to honor a deletion request made on a consumer's behalf, causing financial injuries to consumers who paid subscription fees for the Services and received far less than the advertised privacy value. Consumers could not reasonably avoid the injuries caused by Defendant's deceptive advertising and marketing of the Services. Accordingly, the injuries caused by Defendant's deceptive advertising and marketing outweigh any benefits.

106. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

107. Here, Defendant's conduct of advertising the Services as being able to remove consumers' personal information from data brokers and people search sites, when it has no legal authority to require removal outside California, results in financial harm to consumers. Thus, the utility of Defendant's conduct is outweighed by the gravity of its harm.

108. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

109. Defendant's advertising and marketing of the Services, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations and omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

110. There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Services with the Challenged Representations and Omissions absent adequate basis, or could have disclosed that it cannot require data brokers outside California to honor deletion requests made on a consumer's behalf.

111. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

112. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of advertising and marketing the Services with the Challenged Representations and Omissions.

113. Plaintiff and the Class Members have suffered injury in fact, have lost money, and overpaid for the Services as a result of Defendant's alleged unfair conduct. Specifically, Plaintiff and the Class Members paid for Services that were advertised as being able to remove personal data nationwide, but Incogni lacks such ability in forty-nine states. Plaintiff and the Class Members would not have purchased, renewed, or continued paying the same amount for the Service if they had known that Incogni's advertising and marketing were deceptive. Accordingly, Plaintiff seeks restitution, injunctive relief, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**<u>"Fraudulent" Prong</u>**

114. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

115. Defendant used the Challenged Representations and Omissions with the intent to sell the Services to consumers, including Plaintiff and the Class Members.

The Challenged Representations and Omissions are deceptive, and Defendant knew, or should have known, of its deception. The Challenged Representations and Omissions are likely to mislead consumers into purchasing, renewing, or continuing to pay for the Services because they are material to the average, ordinary, and reasonable consumer.

116. As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

117. Plaintiff and the Class Members reasonably and detrimentally relied on the material and deceptive Challenged Representations and Omissions to their detriment in purchasing, renewing, or continuing to pay for the Services.

118. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Services with the Challenged Representations and Omissions absent adequate basis, or could have disclosed that it cannot require data brokers outside California to honor deletion requests made on a consumer's behalf.

119. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

120. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the Services with the Challenged Representations and Omissions.

121. Plaintiff and the Class Members have suffered injury in fact and have lost money as a result of Defendant's alleged fraudulent conduct. Plaintiff paid an unwarranted premium for the Services, as they were not capable of performing in the way that Incogni claimed that they could. Accordingly, Plaintiff seeks restitution, injunctive relief, and/or disgorgement of ill-gotten gains pursuant to the UCL.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**<u>"Unlawful" Prong</u>**

122. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

123. Defendant's advertising and marketing of the Services, as alleged herein, violates the California Business and Professions Code sections 17500, *et seq*. (the "FAL"), as set forth in the False Advertising Law count below and elsewhere herein.

124. Additionally, Defendant's use of the Challenged Representations and Omissions to sell the Services violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

125. Defendant's conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, and 1711, as well as the common law claims stated in this lawsuit.

126. Defendant's advertising and marketing of the Services, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

127. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Services with the Challenged Representations and Omissions absent adequate basis, or could have disclosed that it cannot require data brokers outside California to honor deletion requests made on a consumer's behalf.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

128. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

129. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of deceptive advertising and marketing of the Services.

130. Plaintiff and the Class Members have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the Class Members overpaid for the Services because they were advertised as being able to remove their data from data brokers but did not provide the promised data removal. Plaintiff and the Class Members would not have purchased, renewed, or continued paying the same amount for the Services if they had known that the Services did not, and could not, perform as represented. Accordingly, Plaintiff seeks restitution, injunctive relief, and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT SIX

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

**(*On Behalf of the Nationwide Class*)**

131. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

132. Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class.

133. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

134. Defendant violated section 17500 when it advertised and marketed the Services through the unfair, deceptive, and misleading Challenged Representations

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and Omissions disseminated to the public through the Services' advertising and marketing. These representations were deceptive because the Services do not conform to them: outside California, Defendant cannot require any data broker to honor a deletion request made on a consumer's behalf. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Services.

135. In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

136. Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the Class Members, to purchase the Services.

137. As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and Class Members were harmed in the amount of the purchase price they paid for the Services. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Services, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class Members for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result, as well as a corrective advertising campaign to correct prior misrepresentations.

**COUNT SEVEN**

**Violation of the Florida Deceptive and Unfair Trade Practices Act**

**(Fla. Stat. §§ 501.201, *et seq.*)**

**(*On Behalf of the Florida Subclass*)**

138. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

139. Plaintiff and the Florida Subclass Members are "consumers," the services sold by Defendant are "services," and the transactions at issue constitute "trade or commerce" within the meaning of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

140. The FDUTPA, Fla. Stat. § 501.204, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

141. For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Defendant's acts and practices, including its Challenged Representations and Omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

142. At all times mentioned herein, Defendant engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that it advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

143. Incogni repeatedly advertised on its website, and through a national online advertising campaign, that its Services would be an effective way for consumers to remove their information from data broker websites, when it knew that this would not be possible for the vast majority of its customers.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

144. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase its services without realizing that the services had no legal basis to actually do what Defendant claimed. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff and Florida Subclass Members have suffered damages by purchasing Incogni's data broker removal services based on Incogni's false and misleading representations and omissions, but received services that were worthless because they would not actually remove their information from data broker sites, as the data brokers had no legal requirement to delete Plaintiff and Florida Subclass Members' data.

145. Defendant's deceptive trade practices caused injury in fact and actual damages to Plaintiff and Florida Subclass Members in the form of the loss or diminishment of value of its services, which allowed Defendant to profit at the expense of Plaintiff and Florida Subclass Members. The injuries Plaintiff and Florida Subclass Members suffered were to legally protected interests. The gravity of the harm of Incogni's actions is significant and there is no corresponding benefit to consumers of such conduct.

146. Plaintiff and the Florida Subclass Members seek relief for the injuries they have suffered as a result of Defendant's unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, requests judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's

conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately enjoin Defendant from continuing to market, advertise, distribute, and sell the Services in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Services resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class requested herein, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

DATED: August 28, 2026

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*

Ryan J. Clarkson, Esq.
Yana Hart, Esq.
Bryan P. Thompson, Esq.
Jiaming Zheng, Esq.